IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| WILLIAM A. FICKLING, JR., and NEVA L. FICKLING, : : : Plaintiffs, : : v. : : UNITED STATES OF AMERICA, : : Defendant. : : | Civil Action No. 5:03-CV-254 (HL) |

## ORDER

Before the Court is Plaintiffs' Motion for Summary Judgment (Doc. 28) and Defendant's Motion for Summary Judgment (Doc. 26). After consideration of the pleadings, stipulations, affidavits, and briefs, the Court hereby denies Plaintiffs' Motion for Summary Judgment and grants Defendant's Motion for Summary Judgment for the reasons explained below.

**I. FACTS**

The parties in this case have stipulated to a rather detailed account of the facts relevant to this case. (Doc. 18). Accordingly, the Court will repeat only those facts necessary to the resolution of the pending motions.

On December 19, 1990, Plaintiffs sold certain debentures[1] to William Anderson for $129,790.93. Plaintiffs claimed a total basis in the debentures of $16,041,839.00. Therefore, on

---

[1] Debentures, similar to bonds, are sold to investors to raise money for a company to grow and expand. Generally, debentures pay interest and a lump sum on a future maturity date. Where bonds are usually secured by specific assets, debentures are not attached to any particular asset.

their 1990 income tax return, Plaintiffs claimed a loss of $15,912,048.00 on the sale of the debentures. This amount was computed by subtracting the amount realized from the sale of the debentures, $129,790.93, from the Plaintiffs' basis in the property, $16,041,839.00. Plaintiffs reported $2,954,672.00 of the loss as a short term capital loss and the remainder, $12,957,376.00, as a long term capital loss.

On February 11, 1991, Anderson sold certain debentures, including those debentures purchased from Plaintiffs in 1990, to seven individuals. The individuals who purchased the debentures included four of Plaintiffs children. As a result of a bankruptcy reorganization plan, those debentures were then converted into shares of common stock on July 21, 1992. Plaintiffs' four children then sold the bulk of their shares of stock during 1993, 1994, and 1995.

In 1995, Defendant initiated an audit of Plaintiffs' federal income tax returns for the years 1998 through 1992. One of the issues raised during the audit involved Plaintiffs claimed loss from the sale of the debentures in 1990. Defendant disputed Plaintiffs' claimed loss for the debentures sold in 1990 and determined that the sale did not result in a deductible loss. Plaintiffs disagreed with Defendant's conclusion and challenged the determination. In the Fall of 1999, Defendant and Plaintiffs agreed to settle their dispute. As a part of the settlement, Plaintiffs agreed to recognize only seventy percent of the loss they claimed from the sale of the debentures in 1990.

In 1997 and 1998, Plaintiffs filed amended income tax returns for 1993, 1994, and 1995. In each of the amended tax returns, Plaintiffs added additional capital losses "to recognize the remaining loss realized on the disposition of the stock received in exchange for the debentures"

sold in 1990. (Pls.' Mem. Supp. Summ. J. 10.) These additional capital losses apparently coincide with the sale by Plaintiffs' children of their common stock received in exchange for the debentures they purchased from Anderson. The process by which Plaintiffs arrived at the amount of the losses claimed is not clear; however, the reported losses reduced Plaintiffs' previously reported income and Plaintiffs' claimed a refund of $1,805, 588.00, over a three year period.

Defendant subsequently disputed these reported losses and, after an investigation, formally disallowed the requested refund for the tax years 1993, 1994, and 1995 on October 3, 2002. Plaintiffs then filed this lawsuit to recover the $1,805,588.00 refund claimed and lawful interest. After discovery, Plaintiffs and Defendant jointly filed a Stipulation of Facts, which contained the relevant undisputed facts of case. Both Plaintiffs and Defendant then filed the separate Motions for Summary Judgment that are currently before the Court.

**II. ANALYSIS**

A. Summary Judgment Standard

Summary judgment must be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When considering a motion for summary judgment, the Court must evaluate all evidence and any logical inferences in a light

most favorable to the non-moving party.  Beckwith v. City of Daytona Beach Shores, 58 F.3d 1554, 1560 (11th Cir. 1995).

"[T]he plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time and discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  The movant carries the initial burden and must meet this burden "by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving partys case." Id. at 325, 106 S. Ct. 2554. "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The nonmoving party is then required "to go beyond the pleadings" and to present competent evidence in the form of affidavits, depositions, admissions and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. 2553.  The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; "there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).  This evidence must consist of more than mere conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Thus, under Rule 56 summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

4

that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. 2552.

B. Refund Claim

As a general rule, deductions are allowed for "any loss sustained during the taxable year and not compensated for by insurance or otherwise." I.R.C. §165(a) (2000). Losses allowable as deductions must be "evidenced by closed and completed transactions, fixed by identifiable events." Treas. Reg. § 1.165-1(b) (2005). A deduction for a loss is only allowed for the taxable year in which the loss was sustained. Treas. Reg. § 1.165-1(d) (2005). "A loss shall be treated as sustained during the taxable year in which the loss occurs as evidenced by closed and complete transactions and as fixed by identifiable events occurring in such taxable year." Treas. Reg. § 1.165-1(d) (2005). A loss claimed in the taxable year in which it was sustained may be carried forward or backward depending on the specific nature of the loss and in accordance with relevant statutes and regulations. See generally I.R.C. § 1212 (2000).

The amount of any specific loss is calculated by subtracting the taxpayer's adjusted basis in the property from the amount of money or property realized from the sale of the property. I.R.C. § 1001(a) (2000). A taxpayer's adjusted basis in a given property is the cost of the property adjusted due to certain events as authorized by relevant statutes and regulations. I.R.C. § 1012 (2000). Common adjustments include an increase in the taxpayer's basis to reflect improvements to the property and a decrease in the taxpayer's basis to reflect claimed depreciation of the property. I.R.C. § 1016 (2000). The amount realized from the sale of a certain property includes the sum of all money received plus the fair market value of all property the taxpayer received in the transaction. I.R.C. §1001(b) (2000).

The Supreme Court of the United States, in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 54 S. Ct. 788, 790 (1934), addressed the taxpayer's rights and burdens in seeking a federal income tax deduction.

> Whether and to what extent deductions shall be allowed depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed. The statutes pertaining to the determination of taxable income have proceeded generally on the principle that there shall be a computation of gains and losses on the basis of a distinct accounting for each taxable year; and only in exceptional situations, clearly defined, has there been provision for an allowance for losses suffered in an earlier year. Not only so, but the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i.e., to treat them as personal to him and not transferable to or usable by another. Obviously, therefore, a taxpayer seeking a deduction must be able to point to an applicable statute and show that he comes within its terms.

Id. at 440, 54 S. Ct. 788, 790. Further, in the litigation of federal tax matters, it is well settled that a taxpayer not only has the burden of proving his or her right to, and amount of, any claimed deduction, but also must overcome the presumption of correctness that attaches to the Internal Revenue Service's determination regarding the claimed deduction. See United States v. Janis, 428 U.S. 433, 440 , 96 S. Ct. 3021, 3025(1976) (holding Internal Revenue Service's determination is entitled to a presumption of correctness in both refund suits and collection suits), INDOPCO, Inc., v. C.I.R., 503 U.S. 79, 84, 112, S. Ct. 1039, 1043 (1992) (holding the burden of showing the right to a claimed deduction is on the taxpayer), Gatlin v. C.I.R., 754 F.2d 921, 924 (11th Cir. 1985) ("Because the taxpayer is privy to the facts that substantiate a deduction, he must bear the burden of proving his right to, and amount of, a claimed deduction.").

In this case, Plaintiffs' claimed deductions for losses allegedly sustained in 1993, 1994,

and 1995. Defendant's official determination concerning Plaintiffs' claimed deductions is that the deductions have no legal basis. Therefore, in order to survive Defendant's Motion for Summary Judgment and succeed on their own Motion for Summary Judgment, Plaintiffs must put forth enough evidence to overcome the presumption that the claimed deductions have no legal basis and establish their right to the claimed deductions, in the amount claimed.[2]

Plaintiffs argue that the deductions for losses they claimed on their amended federal income tax returns for the years 1993, 1994, and 1995, stem from losses suffered when stock, which was received in exchange for the debentures in question, was subsequently sold. Although Plaintiffs do not assert that they had a legal interest in the stock when it was sold, they nevertheless argue that they are entitled to a deduction for the loss they suffered on the sale. According to Plaintiffs, thirty percent of their basis in the debentures was not utilized in 1990 due to the settlement reached with Defendant in 1999. Thus, Plaintiffs assert that the losses claimed in 1993, 1994, and 1995 recognized the remaining adjusted basis in the debentures that was not utilized in 1990.     Although Plaintiffs do not clearly identify the statutes or regulations

---

[2] The Court notes that both parties have filed Motions for Summary Judgment. With respect to Defendant's motion, the Court finds that the legal presumption of correctness that attaches to an Internal Revenue Service determination is sufficient to meet the initial burden of the moving party, under Federal Rule of Civil Procedure 56(c), to show that there is an absence of evidence to support the nonmoving party's claim. Accordingly, the burden has shifted to Plaintiffs. Ordinarily Plaintiffs would have to present evidence that shows that there is a genuine issue for trial in order to survive summary judgment. In this case, however, Plaintiffs have also filed a Motion for Summary Judgment arguing they are entitled to the claimed refund as a matter of law. Therefore, to survive Defendant's Motion for Summary Judgment and succeed on their own, Plaintiffs must put forth substantial evidence that not only establishes their claim, but also overcomes the presumption that Defendant's determination is correct.

that authorize deductions for losses from the sale of property in which the taxpayer has no legal interest, Plaintiffs do put forth two general arguments as to why the Court should allow the deductions. First, Plaintiffs argue that the 1990 sale of the debentures, which resulted in a reported loss of $15,912,048.00, was partially disregarded by Defendant. According to Plaintiffs, under the judicial doctrine of "Sham Transactions," transactions that are disregarded are treated, for tax purposes, as if the transaction had never occurred. Applying the doctrine to the present case, Plaintiffs argue that the sale of the debentures to Anderson, as well as the sale of the debentures to Plaintiffs' children, would be ignored. Plaintiffs assert that as the next bona-fide sale of the debentures in question, which had subsequently been exchanged for stock, occurred when their children sold the stock in 1993, 1994, and 1995, they are entitled to claim a loss on their 1993, 1994, and 1995 federal income tax returns. According to Plaintiffs, a loss resulted because the amount realized in the transactions, presumably by Plaintiffs' children, was less than Plaintiffs' adjusted basis in the debentures.[3]

Although Plaintiffs' argument is difficult to follow, the underlying legal explanation of the Sham Transaction Doctrine is sound. "When a transaction is properly determined to be a sham, the Commissioner is entitled to ignore the labels applied by the parties and tax the transaction according to its substance." <u>Rice's Toyota World, Inc. v. C.I.R.</u>, 752 F.2d 89, 94 (4th Cir. 1985). The Sham Transaction Doctrine allows the Internal Revenue Service to treat transactions aimed at obtaining improper tax benefits in accordance with the actual substance

---

[3]Plaintiffs do not identify which sales of stock were used in computing the claimed losses or how Plaintiffs' adjusted basis in the stock was computed.

of the transaction that took place. Id. As a result, sometimes transactions are treated, for tax purposes, as if they had never occurred in order to accurately tax the substance of the transaction. Id.

Initially, the Court notes, without considering whether the Plaintiffs may take advantage of the Sham Transaction Doctrine or what effect the doctrine would have on the dispute in this case, that Plaintiffs' argument suffers from a fundamental flaw. Neither the sale of the debentures to Anderson nor the purchase by Plaintiffs' children of the debentures from Anderson was ever determined to be a sham transaction. Although Defendant initially asserted the Sham Transaction Doctrine as a possible basis of disputing the 1990 claimed loss during the audit process, the transactions were never classified by Defendant or any judicial body as a sham. The dispute over the deductibility of the 1990 claimed loss was resolved when both Plaintiffs and Defendant agreed to the settlement. According to the settlement, the sale of the debentures to Anderson was not disregarded, as a sham transaction or otherwise, as Plaintiffs were able to deduct a loss of over $11,000,000.00 on the transaction.

Second, Plaintiffs also argue that their basis in the debentures did not simply disappear and to allow Defendant to bar the deductions claimed in 1993, 1994, and 1995 would unjustly benefit Defendant. Plaintiffs assert that the settlement, which resolved the dispute over the loss claimed from the sale of the debentures to Anderson in 1990, had no effect on their basis in those same debentures. The Court does not agree. Plaintiffs' basis in the debentures did not disappear; Plaintiffs' entire basis was used to compute Plaintiffs' loss on the sale of the debentures to Anderson. Plaintiffs then agreed to claim only seventy percent of that loss. It is

not clear why or how Plaintiffs argue that they were entitled to retain some portion of their basis in property they no longer owned.

Further, Plaintiffs entered into a settlement with Defendant in an effort to resolve a dispute concerning the claimed loss from the sale of the debentures to Anderson. Defendant agreed to give up its right to further attempt to collect the additional taxes that would be due if the deduction was subsequently disallowed in its entirety, in exchange for a thirty percent reduction in the amount of the deduction claimed. Similarly, Plaintiffs agreed to give up their right to continue to challenge Defendant's position regarding the claimed deduction, in exchange for a thirty percent reduction in the amount of loss they were able to deduct. Plaintiffs are essentially attempting to now take advantage of the thirty percent of the loss they agreed to give up in the settlement by somehow converting loss to basis. To allow Plaintiffs to now reap the tax benefits of the loss they gave up as part of a settlement would unjustly benefit Plaintiffs, not Defendant.

Plaintiffs assert the right to deduct losses allegedly sustained in 1993, 1994, and 1995 when their children sold stock that had been received in exchange for the debentures in question. Plaintiffs have identified no statute or regulation that authorizes a deduction for losses allegedly sustained when a taxpayer has no ownership interest in property that is sold by a third party. In addition, Plaintiffs have failed to identify the method they used to arrive at the amount of loss claimed in 1993, 1994, or 1995 or the specific sales of stock to which the losses claimed are attributed. Plaintiffs have failed to meet their burden. Plaintiffs have neither proven their right to the deduction claimed nor overcome the legal presumption that Defendant's determination

regarding the claimed deduction is correct.

### III. CONCLUSION

In conclusion, for the reasons set forth above, Plaintiffs' Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

**SO ORDERED**, this the 13th day of March, 2006.

                                                **/s/ Hugh Lawson**
                                                **HUGH LAWSON, Judge**

scs